FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.
2013 JUL 15 P 2:10
CLERK _____
SO. DIST. OF GA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### WAYCROSS DIVISION

MARK ANDREW SMITH,

    Plaintiff,

v.

CIVIL ACTION NO.: CV512-021

JERRY POPE; TONY HENDERSON; LOUISE WHITE; and DR. CELESTINE STILES,

    Defendants.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently incarcerated at Lee State Prison in Leesburg, Georgia, filed a cause of action pursuant to 42 U.S.C. § 1983 contesting certain conditions of his confinement while he was housed at Coffee County Jail in Douglas, Georgia. Defendants White and Stiles ("Movants") filed a Motion for Summary Judgment. Plaintiff responded to this Motion. Movants filed a Reply. For the reasons which follow, Movants' Motion should be **GRANTED**.

## STATEMENT OF THE CASE

Plaintiff asserts that he fell from a ladder while he was on a detail for the Coffee County Sheriff's Department. Plaintiff contends that he suffered several injuries, such as a broken wrist, nose, and tooth, a hip injury, and a lower back injury. Plaintiff also contends that he was placed in the infirmary that night and later required surgery on his nose and wrist. Plaintiff alleges that Defendants Pope, Henderson, White, and Stiles

refused to provide him with his prescribed pain medication for several days. Plaintiff also states that he asked to see Defendant Stiles about his hip and back injuries but was not allowed to do so. Movants aver that Plaintiff does not set forth a sustainable cause of action for deliberate indifference to his serious medical needs.

## STANDARD OF REVIEW

Summary judgment "shall" be granted if "the movant[s] show[ ] that there is no genuine dispute as to any material fact and that the movant[s are] entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp.2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and (Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving parties bear the burden of establishing that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving parties must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant[s are] entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving parties may discharge their burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be

2

AO 72A
(Rev. 8/82)

unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322-23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Co., Fla., 630 F.3d 1346, 1353 (11th Cir. 2011).

## DISCUSSION AND CITATION TO AUTHORITY

Movants worked for Southern Health Partners, Inc., a corporation which had a contract with the Coffee County Jail, during the relevant time period. Defendant White is a licensed practical nurse who worked as the medical team administrator at Coffee County Jail, and Defendant Stiles was the physician at Coffee County Jail. Movants assert that an emergency medical service was called after Plaintiff fell from the ladder on February 22, 2011, and he was taken by ambulance to the local hospital where he was treated for cuts on his face, a broken nose, and pain in his wrist and his right hip. Movants assert that Plaintiff was given several x-rays and computerized tomography ("CT") scans, which revealed he had a broken nose and wrist. Movants state that Plaintiff's wrist was splinted, and he was given instructions to ice his injuries and prescriptions for pain medications and an antibiotic. Upon his return to the jail, Movants allege that Plaintiff was placed in the medical unit for observation. Movants also allege that staff made appointments for Plaintiff to see an orthopedist and an ear, nose, and throat doctor ("ENT"). Defendant Stiles asserts that she ordered that Plaintiff's prescriptions be filled and that he was to be given his pain medications and antibiotic as needed. Defendant Stiles contends that she did not examine or treat Plaintiff because he was being treated properly and adequately by medical providers

3

with more expertise dealing with the kinds of injuries Plaintiff had. Movants assert that Plaintiff continued receiving care and treatment for his injuries until his transfer into the Georgia state prison system in July 2011.

Plaintiff asserts that he was denied his prescription medications and was not allowed to ice his injuries, as hospital staff directed. Plaintiff also asserts that, while he did have an old back injury, his fall caused another back injury which was not treated until his transfer to the Georgia Department of Corrections. Plaintiff contends that he would "beg" the nurses to give him his prescription medications and to send him to a "back doctor." (Doc. No. 132, p. 17). Plaintiff also contends that he was not permitted to see Defendant Stiles while he was housed at Coffee County Jail, nor was he sent to a back specialist.

The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon a prison official to take reasonable measures to guarantee the safety of inmates. The standard for cruel and unusual punishment, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate. Farmer v. Brennan, 511 U.S. 825, 828 (1994). However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105). Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).

In order to prove a deliberate indifference claim, a prisoner must overcome three obstacles. The prisoner must: 1) "satisfy the objective component by showing that [he] had a serious medical need"; 2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and 3) "show that the injury was caused by the defendant's wrongful conduct." Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007). A medical need is serious if it "'has been diagnosed by a physician as *mandating* treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill, 40 F.3d at 1187) (emphasis supplied). As for the subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Under the subjective prong, an inmate "must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Goebert, 510 F.3d at 1327. It is legally insufficient to sustain a cause of action for deliberate indifference to serious medical needs simply because the inmate did not receive the medical attention he deemed appropriate. See Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (noting that a mere difference of opinion as to a prisoner's diagnosis or course of treatment does not support a claim under the Eighth Amendment).[1]

---

[1] Plaintiff was a pre-trial detainee during the relevant time period. A claim that a pretrial detainee has been denied adequate medical care is properly addressable under the Due Process Clause of the Fourteenth Amendment. Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). The Eleventh Circuit Court of Appeals has held that "in regard to providing pretrial detainees with basic necessities as food, living space, and medical care the minimum standard allowed by the Due Process Clause is the same as that allowed by the Eighth Amendment for convicted persons." Hamm v. DeKalb Cnty., 774 F.2d 1567, 1574 (11th Cir. 1985). Because the Eleventh Circuit has held that the minimum standard for the provision of basic necessities, including medical care, is the same for convicted prisoners under the Eighth Amendment and for pretrial detainees under the Fourteenth Amendment, it is appropriate to examine

The evidence before the Court reveals that, after Plaintiff fell from a ladder and was injured on February 22, 2011, he was taken via ambulance to the emergency room at Coffee Regional Medical Center. Plaintiff complained of pain to his right wrist, nose, forehead, back, and right hip. (Doc. No. 113-8, p. 6). Dr. Kenneth Depersio examined Plaintiff after he had several x-rays and CTs taken. (Id. at pp. 17—33). Dr. Depersio placed Plaintiff's broken wrist in a "very well molded sugar tong splint[ ]" and gave instructions for ice and elevation as well as prescriptions for Percocet, Flexeril, and Bacitracin. (Id. at pp. 12, 48). Dr. Depersio also reviewed CTs of Plaintiff's cervical spine, which did not reveal a fracture but showed that Plaintiff had significant decreased cervical disc space and spurring. (Id. at pp. 11—12, 21). Plaintiff was to have a follow-up appointment with Dr. Depersio and was to go see an ENT doctor. (Id. at p. 40). Plaintiff saw Dr. Depersio again on February 28, 2011. (Doc. No. 113-11, p. 13). While Dr. Depersio determined Plaintiff's right wrist was initially doing well, he noticed that Plaintiff's wrist had changed positions. On March 10, 2011, Dr. Depersio performed surgery and kept Plaintiff overnight. (Doc. No. 113-8, pp. 47, 66, 69).[2] Plaintiff was scheduled for a follow-up with Dr. Depersio on March 24, 2011. (Doc. No. 113-9, p. 26). Dr. Depersio's notes from this date reveal that Plaintiff's wrist was healing well, and the doctor wanted to see Plaintiff in three (3) weeks. (Doc. No. 113-11, p. 7). Dr. Depersio saw Plaintiff again on April 13, 2011, May 11, 2011, and June

---

Eighth and Fourteenth Amendment decisional law concerning Plaintiff's claim. See Lancaster v. Monroe Cnty., 116 F.3d 1419, 1425 n.6 (11th Cir. 1997) ("Because both Eighth Amendment cases and Fourteenth Amendment cases establish what constitutes 'deliberate indifference,' we will rely upon decisions in both types of cases.").

[2] Plaintiff went to see Dr. Depersio on March 9, 2011, and Dr. Depersio noted that the surgery would have to be cleared because Plaintiff was a prisoner. (Doc. No. 113-11, p. 12). Plaintiff had surgery the next day, indicating that staff at Coffee County Jail approved this surgery.

AO 72A
(Rev. 8/82)

15, 2011, on which date Dr. Depersio noted that x-rays revealed that the injury was "entirely healed." (Id. at p. 4; id. at pp. 5-6).

When Plaintiff saw Dr. Depersio on February 28, 2011, he began complaining about low back pain, which Plaintiff said he had been experiencing for three (3) days. Plaintiff reported that he had had never had back pain before his fall. (Id. at p. 13). Dr. Depersio gave Plaintiff an x-ray of his lumbar spine, which revealed a significant decrease in disc space in two (2) areas with some anterior spurring. Dr. Depersio determined that this damage predated Plaintiff's fall. Dr. Depersio also determined that Plaintiff's recent episode could improve and that there was nothing objective upon examination. Dr. Depersio gave Plaintiff naproxen. (Id.). Approximately one (1) month later, Dr. Depersio reviewed the x-rays of Plaintiff's back with him and noted there was significant degeneration in one (1) spot. (Id. at p. 7). Plaintiff saw Dr. Depersio again on April 14, 2011, and he informed Plaintiff that he had "significant decreased disc space" in two (2) places, which Dr. Depersio believed to be degenerative and that Plaintiff's "best bet" would be to take an anti-inflammatory on an as needed basis, with "strict precautions[.]" (Id. at p. 6). Dr. Depersio suggested Plaintiff undertake an exercise program and that, in his opinion, there was "no indication of any surgery," but Plaintiff could pursue a second opinion. (Id.).

Plaintiff visited Dr. Jeffrey Silveira, an ENT specialist, on March 3, 2011, due to a nasal fracture he suffered in the fall. Plaintiff went to Dr. Silveira's office again on March 11 and 16, 2011, for pre-operation appointments, and Dr. Silveira performed nasal surgery on March 18, 2011. Plaintiff had post-operation visits with Dr. Silveira on

7

March 21, 24, and 31, 2011. Plaintiff then had follow-up appointments with Dr. Silveira on April 19 and 25, 2011. (Doc. No. 113-12, pp. 7—34).

Plaintiff returned to Coffee County Jail on February 22, 2011, and was placed in an observation cell for medical reasons. (Doc. No. 113-7, p. 11). Plaintiff remained in an observation cell, except as noted above, until April 7, 2011, at which time he was released to the general population. (Id. at p. 20, 31). Medical staff checked Plaintiff several times a day while he was in the observation cell, and he was given his prescribed medications on an as needed basis. (Id. at pp. 6, 11, 13, 19, 30, 39—40, 46—47). Many of the staff's notations on the "Progress Notes" forms indicate that Plaintiff was resting quietly with "no visible distress" and made "no complaints". (Id. at pp. 20—23, 39—40, 46—47). In addition, Plaintiff was given his prescribed medications, including Percocet, Flexeril, antibiotic ointment, naproxen, Lorcet, and Feflex. (Id. at pp. 1, 10, 13, 19, 21—23, 25, 30, 39—40, 47).[3] Finally, Plaintiff made a few sick call requests, but these requests concerned his allergy to wool and his concern over his sentence. (Id. at pp. 14—18, 26—27).

Plaintiff points to evidence which he contends shows that there are genuine disputes as to material facts, and thus, Movants' Motion should be denied. For instance, Plaintiff asserts that he was denied his prescribed medications and was not allowed to ice his injuries. Plaintiff contends that he was given Tylenol and Robaxin, instead of the medications he was prescribed, and that he complained about not be given his medications. In support, Plaintiff points to Progress Notes dated February 22—25, 2011. While these Progress Notes indicate Plaintiff was given Tylenol and

---

[3] Plaintiff's pain medications were to be given on an as needed basis, i.e., Plaintiff was to notify staff if he wanted pain medications. Plaintiff was made aware of this and indicated understanding. (Doc. No. 113-7, p. 46).

8

Robaxin rather than Percocet and Flexeril, these substituted drugs address the same concerns (pain) as those prescribed. (Doc. No. 132-1, p. 6).[4] There is no indication that another kind of pain medication could not be given to Plaintiff. Additionally, while the Progress Note dated February 25, 2011, states that Plaintiff complained of not getting his medications, this Note also states that he was notified that he had to let staff know that he wanted his medications which were prescribed on an as needed basis, i.e, his pain medications. Plaintiff "verbalized his understand[ing]." (Id. at p. 7). As to his back injuries, Plaintiff contends that Movants would not allow him to see a back specialist, despite his requests to do so, for the injuries sustained as a result of his fall off the ladder. However, the treatment note from Plaintiff's emergency room visit does not indicate that Plaintiff sustained a back injury as a result of this fall. Rather, this treatment note indicates that the CTs of Plaintiff's cervical spine were negative for a fracture but that he had "significant decreased cervical disc space, C5-6, with anterior and posterior spurring and he does have decrease at C6-7." (Id. at pp. 3—4). Dr. Depersio's later treatment notes indicate that Plaintiff had degenerative disc problems in his lumbar spine, but that he thought, while not a back specialist, that Plaintiff's condition could be managed with an anti-inflammatory and exercise, and that surgery was not required. (Doc. No. 113-11, pp. 6—7, 13). Plaintiff received naproxen, an anti-inflammatory, twice a day for nearly three (3) weeks while he was detained at Coffee County Jail. (Doc. No. 113-7, p. 19). Dr. Depersion informed Plaintiff by letter dated

---

[4] http://www.webmd.com/drugs/drug-11197-Robaxin+Oral.aspx?drugid=11197&drugname=Robaxin+Oral ; http://www.webmd.com/drugs/drug-11372-Flexeril+Oral.aspx?drugid=11372&drugname=Flexeril+Oral; http://www.webmd.com/a-to-z-guides/acetaminophen-topic-overview; http://www.webmd.com/pain-management/opioid-analgesics-for-chronic-pain.

AO 72A
(Rev. 8/82)

November 29, 2012, that he did not recall discussing Plaintiff's back problems with anyone with the Coffee County Sheriff's Department, including the sheriff. (Doc. No. 132-1, p. 12).

While the objective evidence of record does not appear to present a genuine dispute as to a fact material to Plaintiff's claim that Movants were deliberately indifferent to his serious medical needs, Plaintiff has submitted three (3) affidavits in support of his contention that Movants ignored his repeated requests to see a back specialist and his complaints of pain. One of these affidavits is of James "Jamie" Hollinger, who contends that he was housed in a two-man cell in the medical section with Plaintiff. Mr. Hollinger declares that Plaintiff "constantly complained" to Defendant White about his back, and she would "always assure" Plaintiff that he would be taken to see a back doctor but was not. (Doc. No. 132-2, p. 2, ¶ 8). Mr. Hollinger also declares that Plaintiff would request to see Defendant Stiles "day after day" and was "never allowed to see" her. (Id. at p. 3, ¶ 10). Mr. Hollinger states that Defendant White eventually told Plaintiff that Defendant Stiles had ordered that Plaintiff be seen by a back doctor, yet he never was. (Id. at p. 4, ¶¶ 15-16).

Plaintiff states in his affidavit that Movants reviewed the CT scans that were taken on the date of Plaintiff's fall and saw that he had a back injury. Plaintiff also states that he was not provided with any treatment for his spinal injuries, despite his "daily" requests to see a back specialist. (Doc. No. 132-3, p. 4, ¶¶ 14—16; p. 5, ¶¶ 21—24). Plaintiff declares that he was transferred to the Department of Corrections on July 25, 2011, and he began receiving treatment for his cervical damage. (Id. at p. 4, ¶¶ 18—19).

10

Even accepting the declarations in the affidavits Plaintiff submitted as true, which this Court must do when considering summary judgment motions, Plaintiff fails to create a genuine dispute as to any fact material to his deliberate indifference claim. The assertions made in these affidavits are that Plaintiff had a serious medical need regarding his back and did not receive any medical care or treatment for this serious medical need. However, these assertions are contradicted by other evidence of record, such as Plaintiff's medical records. As detailed above, Plaintiff's medical records reveal that: Dr. Depersio gave Plaintiff x-rays and CTs of his back; these scans revealed that Plaintiff suffered from degenerative problems and were not a result of his fall; Dr. Depersio recommended that Plaintiff take an anti-inflammatory drug for his back as necessary; and Plaintiff was given naproxen (as well as other medications) while he was housed at Coffee County Jail. Plaintiff's desires and demands to see a back specialist only reveal that Plaintiff disagreed with the course of treatment he received for his alleged back injuries, not that Movants were deliberately indifferent to Plaintiff's serious medical needs. Plaintiff fails to create a genuine dispute as to any fact material to his deliberate indifference claim.[5] Reid v. Sec'y, Fla. Dep't of Corr., 486 F. App'x 848, 851 (11th Cir. 2012) (citing Scott v. Harris, 550 U.S. 372, 380-81 (2007), for the proposition that a sworn affidavit is to be credited if it is not blatantly contradicted by other evidence in the record).

---

[5] It appears that Plaintiff's concern is that he did not receive what he considers to be proper treatment for his back injuries, not that he did not receive treatment for the injuries sustained in his fall. For Plaintiff to assert otherwise is clearly against the evidence of record.

11

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that the Motion for Summary Judgment filed by Defendants White and Stiles be **GRANTED**.

**SO REPORTED** and **RECOMMENDED**, this 15th day of July, 2013.

_____
JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)